**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

THE SCHOOL BOARD OF
BROWARD COUNTY, FLORIDA,

       Plaintiff,

v.                                  CIVIL ACTION NO.:

CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NO.
PK1000617,

       Defendants.

_____/

## <u>NOTICE OF REMOVAL</u>

Certain Underwriters at Lloyd's, London Subscribing to Policy No. PK 1000617 ("Underwriters") remove to this Court the civil action filed by Plaintiff in the Circuit Court of the Seventeenth Judicial District in and for Broward County, Florida under 9 U.S.C. § 205 and 28 U.S.C. §§ 1331, 1332 1441, and 1446. This case is removable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly known as the New York Convention) and 9 U.S.C. § 205 because (1) the insurance policy contains a written agreement to arbitrate; (2) the arbitration agreement falls under the New York Convention; and (3) the dispute relates to the arbitration agreement.  This case is also removable as

under diversity jurisdiction as the case involves a citizen of the United Kingdom and a citizen of Florida.

## I.    FACTUAL BACKGROUND

### A.    The State Court Action

1.    On November 22, 2025, Plaintiff filed its Complaint in the case styled *The School Board of Broward County, Florida v. Certain Underwriters of Lloyd's, London Subscribing to Policy No. PK1000617*,[1] in the Circuit Court for the Seventeenth Judicial District in and for Broward County, Florida, Case Number CACE25017957 (the "State Court Action"). At the time of this removal, the only documents filed in the State Court Action are: (1) the Complaint; (2) the Civil Cover Sheet; (3) the Uniform Case Management Order – General; (4) the Summons; (5) the Amended Complaint; (6) the Summons Returned Service; (7) the Notice of Related Cases; and (8) the Notice of Appearance by Plaintiff's counsel. Copies of all documents filed in the State Court Action are attached hereto as **Exhibit A**, as required by 28 U.S.C. § 1446(a).

2.    In the State Court Action, Plaintiff seeks indemnification, damages, and declaratory judgments in connection with the defense and settlement of numerous lawsuits filed against Plaintiff arising out of the February 14, 2018 school shooting

---

[1] Underwriters were improperly named in the State Court Action as "Certain Underwriters *of* Lloyd's, London," whereas the correct name is: "Certain Underwriters *at* Lloyd's, London."

that occurred at Marjory Stoneman Douglas High School in Parkland, Florida (the "Parkland shooting"). *See* **Exhibit A,** Amended Complaint.

3.      Plaintiff is seeking indemnification in connection with the settlements paid in connection with the lawsuits arising out of the Parkland shooting, which the Plaintiff contends revolves around a dispute as to the number of "occurrences," to which Underwriters disagree. Through the Amended Complaint in the State Court Action, Plaintiff is seeking to recover under the following theories: breach of contract, declaratory judgment, fraudulent misrepresentation and, alternatively, negligent misrepresentation. *See* **Exhibit A**, Amended Complaint.

### B.      The Policy

4.      Plaintiff is seeking indemnification, and asserts a cause for breach of contract, under a multi-lines policy subscribed to by Underwriters, policy number PK1000617, issued to The School Board of Broward County, for the effective dates of July 1, 2017 to July 1, 2018 (the "Policy"). *See* Policy, attached hereto as **Exhibit B**. The Policy provides certain coverages to Plaintiff subject to the Policy's terms, conditions, limitations, and exclusions. *See* **Exhibit B**, Policy.

5.      The Policy is an insurance contract between Plaintiff and Certain Underwriters at Lloyd's, London Subscribing to Policy No. PK1000617.

6.      Certain Underwriters at Lloyd's, London typically refers to the unincorporated association of members that insure risks through the Lloyd's of

London insurance market. These members often subscribe to risks through syndicates, which are administrative entities. *Underwriters at Lloyd's London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010).

7.      Here, Brit UW Limited ("Brit") is the sole underwriter that subscribed to Policy No. PK1000617 through Syndicate 2987.  Brit is a private limited company organized under the laws of England and Wales with its principal place of business in London, England. *See SHLD, LLC v. Hall*, 15 CIV. 6225 LLS, 2015 WL 5772261, at *2 (S.D.N.Y. Sept. 29, 2015) (citation omitted); *Simon Holdings PLC Group of Companies U.K. v. Klenz,* 878 F. Supp. 210, 211 (M.D. Fla. 1995) (treating a private limited company "incorporated under the laws of the United Kingdom" as a corporation for diversity and subject matter jurisdiction purposes pursuant to a determination of its citizenship under 28 U.S.C. § 1332); *Chok v. S & W Berisford, PLC,* 624 F.Supp. 440, 441 (S.D.N.Y.1985) (in which the court accepts the parties' agreement that a British private limited company "is a corporation formed under the laws of the United Kingdom," and therefore treats it as a corporation for purposes of diversity determination).

8.      The Policy contains an arbitration provision (the "Arbitration Agreement"), which states:

> **2.**      **Arbitration:** In the event the **ASSURED** and Underwriters are unable to agree as to the amount recoverable by the **ASSURED** from Underwriters under the terms and conditions of this Policy, each party shall name a competent and disinterested arbitrator,

and the two so chosen shall, before proceeding further, appoint a competent and disinterested umpire. The arbitrators together shall calculate the indemnity due, and failing to agree, shall submit their differences to the umpire.

The award in writing, duly verified by any two, shall determine the points in question. Both parties shall pay the cost of their arbitrators and equally pro rate the cost of the umpire. The **ASSURED'S** portion of such fee does not accrue to the **ULTIMATE NET LOSS**.

The decision by the arbitrators shall be binding on Underwriters and the **ASSURED**, and that judgment may be entered in any court of competent jurisdiction.

**Exhibit B**, Policy, at p. 14 of 105.

9.  Pursuant to the Arbitration Agreement in the Policy, Plaintiff and Underwriters agreed to arbitrate "[i]n the event [they] are unable to agree as to the amount recoverable by [Plaintiff] from Underwriters under the terms and conditions of [the] Policy." **Exhibit B**, Policy, at p. 14 of 105. The Policy is an indemnity only policy so the only rights and obligations the Plaintiff has are to be reimbursed for money spent in the defense and settlement of claims.

10.  Plaintiff claims that Underwriters failed to indemnify it for the defense costs and settlement payments it believes should have been reimbursed under the Policy in connection with the Parkland shooting claims and lawsuits. Underwriters dispute this and believe that the $700,000 policy limit already paid reflects the entirety of the recoverable indemnity which the Plaintiff is entitled to under the

Policy. This dispute relates directly to the "amount[s] recoverable" under the Policy and must be resolved in arbitration in accordance with the Arbitration Agreement.

## II.   JURISDICTION IS PROPER UNDER 28 U.S.C. § 1331

11.   This Court has original jurisdiction over this matter under 28 U.S.C. § 1331, which provides that federal courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. This matter arises out of a treaty, the New York Convention. The Court's original jurisdiction is confirmed by 9 U.S.C. § 203, which states: "An action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

12.   Because this court has original jurisdiction, removal is proper under 9 U.S.C. § 205, which states, in relevant part:

> [w]here the subject matter of an action or proceeding pending in a State court *relates to an arbitration agreement* or *award falling under the Convention*, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal.

9 U.S.C. § 205 (emphasis added).

-6-

13.     Thus, under 9 U.S.C. § 205, removal is proper when: (1) an arbitration agreement falls under the New York Convention; and (2) the dispute relates to an arbitration agreement. This provision is broadly construed. As this Court explained in *Terra Towers Corpv. v. Gelber Schachter & Greenberg, P.A.*,

> [w]hen Congress granted the federal courts jurisdiction over New York Convention cases, it 'added one of the broadest removal provisions, § 205, in the statute books.'

No. 22-21204-CIV, 2022 WL 2816722 (S.D. Fla. July 19, 2022) (citing *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 377 (5th Cir. 2006) ("So generous is the removal provision that we have emphasized that the general rule of construing removal statutes strictly against removal cannot apply to Convention Act cases because in these instances, Congress granted special removal rights to channel cases into federal court.")).

14.     The Eleventh Circuit, following other circuits' broad interpretation, holds that "the 'relates to' language of Section 205 provides for broad removability of cases to federal court . . .the arbitration agreement need only be sufficiently related to the dispute such that it conceivably affects the outcome of the case. Thus, as long as the argument that the case 'relates to' the arbitration agreement is not immaterial, frivolous, or made solely to obtain jurisdiction, the relatedness requirement is met for purposes of federal subject matter jurisdiction." *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323-24 (11th Cir. 2018), *rev'd on other*

grounds, *GE Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 140 S. Ct. 1637, 207 L. Ed. 2d 1 (2020).

15.     In accordance with the legal precedent cited above and herein, removal to this Court is proper because the Arbitration Agreement falls under the New York Convention and this dispute relates to the Arbitration Agreement.

**A.     The Arbitration Agreement Falls Under the New York Convention.**

16.     The Eleventh Circuit has enumerated four jurisdictional prerequisites for an agreement to fall under the Convention: "(1) there is a written agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states." *Linden v. NCL (Bahamas)*, 652 F.3d 1257, 1272 n.10 (11th Cir. 2011) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n. 7 (11th Cir. 2005).

17.     The Convention and legal precedent recognize the Court "conducts only a *'very limited inquiry'* in deciding a motion to compel arbitration under the Convention" and same "generally establishes a strong presumption in favor of arbitration." *Linden*, 652 F.3d at 1272.

18.     Here, the four factors are clearly met: (1) as evidenced by the Policy, the Arbitration Agreement is a written agreement to arbitrate this dispute; (2) the United States is a Convention signatory;[2] (3) the agreement arises out of a commercial relationship between Plaintiff and Underwriters (here, the sole subscribing member Brit); and (4) Underwriters are not American citizens (here, the sole subscribing member Brit). Moreover, because the Policy is subscribed through the Lloyd's of London insurance market in the United Kingdom, the Arbitration Agreement has a "reasonable relation" to a foreign state. Various courts across the country, including this Court, have consistently upheld arbitration provisions that bind members of Lloyd's insurance market. *See e.g. VVG Real Estate Investments v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1205 (S.D. Fla. 2018); *German Int'l Sch. of Fort Lauderdale, LLC v. Certain Underwriters at Lloyd's, London*, CV 19-60741-CIV, 2019 WL 2107260, at *3 (S.D. Fla. May 14, 2019); *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991); *Georgetown Home Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 20-cv-102, 2021 WL 359735 (M.D. La., Feb. 2, 2021); *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. CV 20-2326, 2020 WL 7342752 (E.D. La., Dec. 14, 2020); *Woodward Design+Build, LLC v. Certain*

---

[2] United Nations Commission on International Trade Law, *Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards* (New York, 1958), https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Mar. 30, 2026).

*Underwriters at Lloyd's, London*, No. 19-cv-14017, 2020 WL 5793715 (E.D. La., Sept. 29, 2020).

19.     Thus, the Eleventh Circuit's four-part test is satisfied, and the Arbitration Agreement clearly falls under the Convention.

**B.      The Dispute Relates to the Arbitration Agreement**

20.     The subject matter of this action "relates to" an arbitration agreement under 9 U.S.C. § 205. Courts have found that an action "relates to" an arbitration agreement when the action has some connection, relation, or reference to the arbitration agreement. *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373, 376 (5th Cir. 2006). "[T]he phrase 'relates to' 'conveys a sense of breadth' and 'sweeps broadly.'" *Id.* at 377 (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)). "[A] clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes." *Id.* at 379.

21.     Here, the Arbitration Agreement provides that when Plaintiff and Underwriters are "unable to agree as to the amount recoverable by the [Plaintiff]," same is resolved via arbitration. *See* **Exhibit B**, Policy, at p. 14 of 105. Plaintiff's claims against Underwriters, as alleged in its Amended Complaint, fit squarely within this provision.

22.     In the State Court Action, Plaintiff claims through its breach of contract claim that it is entitled to "a minimum of $15,590,651 in settlement payments for

-10-

which [Underwriters were] obligated to indemnify" Plaintiff. **Exhibit A**, Amended Complaint, at ¶ 120. Effectively, Plaintiff is claiming that it is entitled to further payment under the Policy where Underwriters have already paid their $700,000 limit, reflecting a dispute as to the "amount recoverable" under the Policy. As such, the Plaintiff's claims asserted in the State Court Action are subject to the parties' agreement to arbitrate and must be compelled to arbitration in accordance with the Arbitration Agreement.

23.     Plaintiff's Count II – Declaratory Judgment As To The Release specifically alleges Underwriters "asserted in writing that the Release absolves it of any further obligation to make payments to the School Board under the Policy or otherwise in connection with the Parkland School Shootings *beyond the $700,000 that [Underwriters] already paid*." **Exhibit A**, Amended Complaint, at ¶ 131 (emphasis added).  Plaintiff's Count II appears to prospectively anticipate one of Underwriters' defense to whether they owe additional indemnity under the Policy and subject to the Arbitration Agreement.

24.     Plaintiff's Count III – Declaratory Judgment As To Defendant's Wrongful Disclaimer Of Coverage Under The Policy is premised upon Underwriters' alleged "assert[ion] that [they] had no obligation to make any additional payments under the Policy beyond the single per-occurrence limit of $700,000 that it had already been paid ...." **Exhibit A**, Amended Complaint, at ¶

-11-

136. Again, Plaintiff's Count III is nothing more than a restated breach of contract claim seeking additional indemnity payments under the Policy and subject to the Arbitration Agreement.

25. Plaintiff's Count IV – Fraudulent Misrepresentation, likewise, is based upon Plaintiff's belief that it was fraudulently induced into making a larger settlement payment than that which Underwriters provided through their policy limits payment. **Exhibit A**, Amended Complaint, at ¶¶ 141-153. This Count appears to be a premature bad faith claim, but necessarily seeks to justify payments it claims are recoverable under the Policy and falls under the Arbitration Agreement.

26. Finally, while an alternative claim, Plaintiff's Count V – Negligent Misrepresentation is based on largely the same facts as Count IV, including the alleged inducement by Underwriters purportedly causing Plaintiff to pay a larger settlement than that of Underwriters' policy limits payment. **Exhibit A**, Amended Complaint, at ¶¶ 155-167.

27. As outlined above, the subject matter of Plaintiff's action relates to whether it is entitled to additional payments under the Policy and is subject to the Arbitration Agreement.

28. For these reasons, removal is proper under 9 U.S.C. § 205 because the Arbitration Agreement falls under the New York Convention and this dispute relates to the Arbitration Agreement.

### III. JURISDICTION IS PROPER UNDER 28 U.S.C. § 1332

29. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332(a), which provides that federal courts have original jurisdiction in civil actions where the parties are citizens of different states or citizens of a State and citizen of a foreign state, and where the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1-2).

#### A. Plaintiff and Underwriters are Completely Diverse.

30. Plaintiff is an education agency formed under the laws of the state of Florida and is domiciled in Broward County, Florida. Plaintiff as a governmental agency in the State of Florida is a citizen of the state of Florida for diversity purposes.

31. As stated, Brit is the sole underwriter that subscribed to Policy No. PK1000617.

32. Brit is a private limited company organized under the laws of England and Wales with its principal place of business in the United Kingdom. Brit is a citizen of the United Kingdom. To be sure, "private limited companies in the U[nited] K[ingdom] are treated as corporations for the purposes of diversity subject-matter jurisdiction." *SHLD, LLC*, 15 CIV. 6225 LLS, 2015 WL 5772261, at *2 (citation omitted); see *Klenz,* 878 F. Supp. at 211 (treating a private limited company "incorporated under the laws of the United Kingdom" as a corporation for diversity and subject matter jurisdiction purposes pursuant to a determination of its citizenship

under 28 U.S.C. § 1332); *Chok,* 624 F. Supp. at 441 (in which the court accepts the parties' agreement that a British private limited company "is a corporation formed under the laws of the United Kingdom," and therefore treats it as a corporation for purposes of diversity determination).  Consequently, as Brit is a private limited company organized under the laws of England and Wales with its principal place of business in the United Kingdom, Brit is a citizen of the United Kingdom for diversity purposes.

33.    No other parties have been joined or served in this action.

**B.     The Amount in Controversy Requirement is Satisfied.**

34.    Plaintiff's Amended Complaint seeks, through its breach of contract claim alone, $15,590,651 in indemnity under the Policy, in addition to damages in connection with its Fraudulent Misrepresentation claim. As such, the amount in controversy, exclusive of interest and costs, exceeds that of $75,000.00.

35.    While Underwriters deny liability as to Plaintiff's allegations, Plaintiff seeks damages in excess of the jurisdictional limit of $75,000, as required under 28 U.S.C. § 1332(a).

## IV.    <u>REMOVAL PROCEDURES</u>

36.     Removal of this action is timely. Underwriters were served with the State Court Action on March 23, 2026. Thus, removal is timely under 28 U.S.C. § 1446(b)(1).

37.     Further, removal is timely under 9 U.S.C. § 205. Removal under this statute is broader than removal under the general removal statutes, 28 U.S.C. §§ 1441, 1446. *Acosta*, 452 F.3d 377. In particular, defendants may remove an action that relates to an arbitration agreement falling under the New York Convention "at any time before the trial thereof." Because this case is still in its beginning stages and trial has not begun, removal is timely under 9 U.S.C. § 205.

38.     Removal is properly made to the United States District Court for the Southern District of Florida under 28 U.S.C. § 1441(a) and 9 U.S.C. § 205 because Broward County, where the State Court Action is currently pending, is within the Southern District of Florida, Fort Lauderdale Division.

39.     Promptly after filing this Notice of Removal with the Court, Underwriters will file written notice of the filing with the Clerk of the Court where the State Court Action is pending, in satisfaction of 28 U.S.C. § 1446(d).

40.     In removing this matter to this Court, Underwriters do not intend to waive any defenses they might have, including, but not limited to, improper service, personal jurisdiction, and/or venue.

**WHEREFORE**, Underwriters remove this action from the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, and to the United States District Court for the Southern District of Georgia, Fort Lauderdale Division.

-15-

This 10th day of April, 2026.

**WOOD, SMITH, HENNING & BERMAN LLP**
1230 Peachtree Street, Suite 925
Atlanta, Georgia 30309
Telephone:  470-552-1150
Fax:  470-552-1151
*rzelonka@wshblaw.com*
*ntuz@wshblaw.com*
*slytle@wshblaw.com*
*jhilton@wshblaw.com*

*/s/ Richard E. Zelonka, Jr.*
Richard E. Zelonka, Jr.
FBN: 0656941

*Counsel for Defendant,
Certain Underwriters at Lloyd's,
London Subscribing to Policy No.
PK1000617*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day electronically filed the within and foregoing *Notice of Removal* with the Clerk of Court using the Court's CM/ECF system which will send notification to all parties of record as follows:

Meghan C. Moore
Nicole A. Josephy
FLASTER GREENBERG, P.C.
2255 Glades Road, Suite 324A
Boca Raton, Florida 33431
meghan.moore@flastergreenberg.com
nicole.josephy@flastergreenberg.com

This 10th day of April, 2026.

**WOOD, SMITH, HENNING & BERMAN LLP**
1230 Peachtree Street, Suite 2350
Atlanta, Georgia 30309
Telephone:  470-552-1150
Fax:  470-552-1151
*rzelonka@wshblaw.com*
*ntuz@wshblaw.com*
*slytle@wshblaw.com*
*jhilton@wshblaw.com*

*/s/ Richard E. Zelonka, Jr.*
Richard E. Zelonka, Jr.
FBN: 0656941

*Counsel for Defendants,*
*Certain Underwriters at Lloyd's,*
*London Subscribing to Policy No.*
*PK1000617*

-17-